UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

MUNEER MUSTAFA TAWAM, :
                  Plaintiff, :
                   :
          v. :   No. 5:18-cv-00122
                   :
APCI FEDERAL CREDIT UNION, :
                  Defendant. :

**O P I N I O N**
Defendant's Motion to Dismiss, ECF No. 11 – Denied

**Joseph F. Leeson, Jr.**                                                                          August 3, 2018
**United States District Judge**

## I.    INTRODUCTION

Plaintiff Muneer Mustafa Tawam alleges that Defendant APCI Federal Credit Union ("APCI") operates a website that is inaccessible to the visually-impaired. *See* First Am. Compl. ¶ 4, ECF No. 9. Mr. Tawam is permanently blind and asserts that APCI's operation of an inaccessible website violates Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 (the "ADA"). *See id.* ¶ 6. APCI filed a Motion to Dismiss, asserting that: (1) because Mr. Tawam is not a member of APCI, he has not suffered an injury-in-fact and therefore lacks standing; and (2) Title III of the ADA does not apply to websites because they are not places of "public accommodation," 42 U.S.C. § 12181(7). *See* Def.'s Br. Supp. Mot. Dismiss 9, ECF No. 11-1.[1] At this stage of the proceedings and after balancing the facts presented by both parties on the issue of standing, this Court concludes that Mr. Tawam has presented facts that he is eligible to use APCI's services and therefore suffered an injury-in-fact. Additionally, Mr. Tawam's

---
[1]     The National Association of Federally-Insured Credit Unions (NAFCU) filed an amicus brief in support of APCI's Motion to Dismiss. *See* Br. NAFCU Amicus Curiae 4, ECF No. 15.

allegations that he has been prohibited from utilizing a service of APCI that has a nexus with a physical location is sufficient to survive the motion to dismiss stage.

## II. BACKGROUND

The First Amended Complaint alleges as follows: Mr. Tawam is permanently blind and relies upon a screen reader in order to access websites. *See* Am. Compl. ¶ 4. A screen reader vocalizes visual information on a computer screen. *Id.* ¶ 10. Unless a website is designed to be read by screen reading software, a blind person will be unable to access the website. *Id.* APCI is a federal credit union that operates a credit union location in Pennsylvania as well as a website, apcifcu.org. *Id.* ¶¶ 5-6. Mr. Tawam has attempted to access apcifcu.org several times but has been unable to navigate the website due to the accessibility barriers. *Id.* ¶ 18. Mr. Tawam is eligible to access the facilities of APCI because APCI is a member of the Co-Op Shared Branch network of credit unions. *Id.* ¶ 7. The Co-Op Shared Branch network allows credit union members that are part of the network to use the services of any other member credit union. *Id.* Mr. Tawam is a member of Philadelphia Federal Credit Union, which is a member of the Co-Op Shared Branch network. *Id.* Mr. Tawam is seeking injunctive relief and attorney's fees. *See* Am. Compl. 15.

In the Motion to Dismiss, APCI disputes that it is a member of the Co-Op Shared Branch network, asserting that it is only a member of the Co-Op ATM network. *See* Def.'s Br. Supp. Mot. Dismiss 8. The APCI website only provides that it is part of the Co-Op network while referring to ATMs. *See* Am. Compl. ¶ 7 (citing http://www.apcifcu.org/tools-and-resources/atm-locator (last visited Apr. 6, 2018)).

In response to the Motion to Dismiss, Mr. Tawam submitted an affidavit of Attorney Scott J. Ferrell which provides screen-grabs of the Co-Op Shared Credit Union website from

2
080318

May 7, 2018, showing that APCI is listed as participating in both the Co-Op Shared Branch network and the Co-Op ATM network. *See* Pl.'s Opp. Def.'s Mot. Dismiss Exs. B, C, ECF No. 12.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss – Federal Rule of Civil Procedure 12(b)(1)

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) if the plaintiff lacks standing under Article III of the Constitution. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998). Article III limits the jurisdiction of federal courts to "actual cases and controversies," U.S. Const. art. III, § 2, and one element of this "bedrock requirement" is that plaintiffs "must establish that they have standing to sue." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 41 (3d Cir. 2011) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). Only if the following requirements are met does a plaintiff have standing to bring a claim:

> First, the plaintiff must have suffered an "injury-in-fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations omitted) (quotation marks omitted).

Each of these elements and the terms used to describe them "cannot be defined so as to make application of the constitutional standing requirement a mechanical exercise." *Allen v. Wright*, 468 U.S. 737, 751 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). To determine whether a plaintiff has Article III

standing, courts must look to guiding principles laid out in prior case law. *Id.* at 752 (explaining that "[d]etermining standing in a particular case may be facilitated by clarifying principles or even clear rules developed in prior cases").

It is the plaintiff's burden to demonstrate these three elements of standing, and if the plaintiff is unable to establish any element of this test, the claim must be dismissed. *Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286, 290-91 (3d Cir. 2005). Further, "[s]ince they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Defenders of Wildlife*, 504 U.S. at 561. At the pleading stage, a complaint need only contain "general factual allegations of injury resulting from the defendant's conduct . . . for on a motion to dismiss [courts] 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)). In addition, a plaintiff seeking injunctive relief must demonstrate a "real and immediate threat of future injury by the defendant." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983).

"[T]here are two types of Rule 12(b)(1) motions: those that attack the complaint on its face and those that attack subject matter jurisdiction as a matter of fact." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (citing *Mortensen v. First Fed. Sav. & Loan*, 549 F.2d 884, 891 (3d Cir. 1977)). "[A] court must first determine whether the movant presents a facial or factual attack" because the distinction determines the standard of review. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the

4
080318

complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Petruska*, 462 F.3d at 302 n.3). A factual attack challenges "subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). A factual attack "cannot occur until plaintiff's allegations have been controverted[,]" *Mortensen*, 549 F.2d at 892 n.17, which occurs when the movant files an answer or "otherwise presents competing facts." *Constitution Party of Pa.*, 757 F.3d at 358. "When a factual challenge is made, 'the plaintiff will have the burden of proof that jurisdiction does in fact exist,' and the court 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Davis*, 824 F.3d at 346 (quoting *Mortensen*, 549 F.2d at 891). "[N]o presumptive truthfulness attaches to [the] plaintiff's allegations. . . ." *Id.* (quoting *Mortensen*, 549 F.2d at 891) (alterations in original).

### B. Motion to Dismiss – Federal Rule of Civil Procedure 12(b)(6)

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

(explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## IV. ANALYSIS

### A. Mr. Tawam alleges sufficient facts to establish standing.

"Under Title III of the ADA, the only remedy available to a private plaintiff is prospective injunctive relief." *Hollinger v. Reading Health Sys.*, No. 15-5249, 2016 WL 3762987, at *10 (E.D. Pa. July 14, 2016). *See also* 42 U.S.C. § 12188 (describing the remedies available under the ADA). Thus, the plaintiff "must demonstrate a real and immediate threat of injury in order to satisfy the injury in fact requirement." *Harty v. Burlington Coat Factory of Pennsylvania*, L.L.C., No. 11-01923, 2011 WL 2415169, at *3 (E.D. Pa. June 16, 2011) (internal quotations omitted). Specifically, the plaintiff "must show that he or she is likely to suffer future injury from the defendant's illegal conduct." *Doe v. Nat'l Bd. of Med. Examiners*, 210 F. App'x 157, 160 (3d Cir. 2006). The plaintiff may demonstrate a threat of future injury with one of two methods: (1) intent to return or (2) deterrence effect. *Hollinger*, 2016 WL 3762987, at *10.

Here, APCI contends that Mr. Tawam has not suffered a concrete injury-in-fact because, as a non-member, Mr. Tawam has no right to access the banking services offered by APCI.[2] *See* Def.'s Br. Supp. Mot. Dismiss 10; *see also* Br. NAFCU Amicus Curiae 10. In response, Mr. Tawam asserts that he is able to access the banking services offered by APCI because it is part of a Co-Op Shared Branch network and his claim stems from: (1) his inability to access the

---

[2] APCI does not challenge the causation or redressability elements of standing with its Motion to Dismiss.

information on the website, (2) being deterred from accessing APCI's website and physical location, and (3) an injury to his dignitary interest.  *See* Am. Compl. ¶¶ 13, 16, 17, 18.

> ### 1.     *Mr. Tawam has presented sufficient facts at this stage to show that he is entitled to access APCI's services as a member of a co-op network of federal credit unions and therefore has a threat of future injury.*

Mr. Tawam alleges that he is entitled to use APCI's services as a member of the Co-Op Shared Branch network, which entitles co-op members to use the services of any member credit union.  *See* Am. Compl. ¶ 7.  APCI claims that Mr. Tawam has not suffered an injury-in-fact for two reasons.  First, APCI is not a member of the Co-Op Shared Branch network.  *See* Def.'s Br. Supp. Mot. Dismiss 15.  Second, Mr. Tawam is ineligible to join APCI Federal Credit Union or use its branch services, even if he could access the website.  *See id.* 13.

As an initial matter, this Court must decide whether APCI has asserted a facial or factual challenge to the Court's subject matter jurisdiction.  A factual challenge requires the defendant to file an answer or "otherwise presents competing facts."  *See Constitution Party of Pa.*, 757 F.3d at 358.  Although APCI has not filed an answer, it has alleged competing facts.  Specifically, the Motion to Dismiss disputes the fact that APCI is part of the Co-Op Shared Branch network, citing to the content of the Amended Complaint.  These competing facts affect whether Mr. Tawam has standing, and thus, the Court will still construe the Motion to Dismiss as a factual attack.  *See Davis*, 824 F.3d at 346 (holding that a court should be "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" (quoting *Mortensen*, 549 F.2d at 891)).

The Federal Credit Union Act of 1934 provides that the membership of any Federal credit union shall be limited to specific membership groups—a "membership field."  *See* 12 U.S.C. § 1759(b).  The membership field of a credit union must be limited to members that share "a

7
080318

common bond of occupation or association" or exist "within a well-defined local community, neighborhood, or rural district." *Id.* APCI asserts that its membership field is limited to individuals with a common bond of employment by Air Products, and Chemicals, Inc. or those having familial relationships with such individuals. *See* Def.'s Br. Supp. Mot. Dismiss 12. APCI argues that Mr. Tawam has not suffered an injury which is concrete and particularized, and actual and imminent, because he does not allege that he is part of APCI's membership field. *See id.* 13.

According to the Amended Complaint, however, APCI is part of the Co-Op Shared Branch network of credit unions, which allows credit union members that are part of the network to use APCI's services, such as ATMs. *See* Am. Compl. ¶ 7 (citing http://www.apcifcu.org/tools-and-resources/atm-locator (last visited Apr. 6, 2018); https://co-opcreditunions.org/ (last visited Apr. 6, 2018)). Mr. Tawam alleges that he is member of Philadelphia Federal Credit Union, which is also part of the Co-Op Shared Branch network. *See id.* (citing https://www.pfcu.com/personal-banking/checking-accounts/debit-check-cards/atm-card (last visited Apr. 6, 2018)). APCI disputes whether it is part of the Co-Op Shared Branch network, distinguishing between the Co-Op Shared Branch network and the Co-Op Shared ATM network. *See* Def.'s Br. Supp. Mot. Dismiss 8. Consequently, this Court will weigh the facts submitted by both parties.

Apcifcu.org states that APCI is part of the "Co-Op Network" and discusses thousands of locations nationwide, "many of which are deposit-taking ATMs." *See* Am. Compl. ¶ 7. The website only references the "Co-Op Network" and is ambiguous as to whether APCI participates in shared banking or ATM network. *See id.* APCI asserts that PFCU is only a member of the Co-Op ATM network. *See* Def.'s Br. Supp. Mot. Dismiss 8. In response, Mr. Tawam submitted

an affidavit of Attorney Scott J. Ferrell which provides screen-grabs of the Co-Op Shared Credit Union website from May 7, 2018, showing that APCI is listed as participating in both the Co-Op Shared Branch network and the Co-Op ATM network. *See* Pl.'s Opp. Def.'s Mot. Dismiss Exs. B, C.

Weighing the facts presented, this Court concludes that Mr. Tawam is able to access APCI's services. The ambiguity of the statement on APCI's website together with Mr. Ferrell's screen-grabs makes it reasonable to conclude that APCI is part of the Shared Branch network. Additionally, the parties do not dispute that APCI and PFCU are part of a shared ATM network, allowing Mr. Tawam to access APCI's ATMs. Consequently, Mr. Tawam has submitted facts to show a real threat of injury, and therefore has standing.

### 2. Mr. Tawam asserts an imminent injury because he generally alleges that he would have visited the physical locations.

Amicus counsel also urges the Court to consider whether Mr. Tawam has suffered an imminent injury because he does not live near the APCI location. *See* Br. NAFCU Amicus Curiae 19. However,, in the Amended Complaint, Mr. Tawam alleges that he "would have located and visited" the physical locations without the website accessibility barriers. *See* Am. Compl. ¶ 18. While this Court must be cautious to ensure that Mr. Tawam is not simply alleging "'some day' intentions," the Court must also assume that the "general allegations embrace those specific facts that are necessary to support the claim." *Defenders of Wildlife*, 504 U.S. at 561. Given that Mr. Tawam apparently lives some distance from the APCI location, *see* Am. Compl. ¶ 1, it may prove difficult for Mr. Tawam to "'set forth' by affidavit or other evidence 'specific facts'" that demonstrate that he would actually visit the locations. *Id.* (quoting Fed. R. Civ. P. 56(e)) (citation omitted). Nevertheless, his general allegations are sufficient at this early motion to dismiss stage.

### 3. Mr. Tawam sufficiently alleges a concrete injury because he has been deterred from accessing APCI's locations.

APCI argues that Mr. Tawam cannot have suffered a concrete injury as a result of not being able to access apcifcu.org. *See* Def. Mot. Dismiss 10; Br. NAFCU Amicus Curiae 9. APCI contends that Mr. Tawam has asserted a bare allegation of an ADA violation, which does not support standing.

Prior to the United States Supreme Court's decision in *Spokeo*,[3] district courts within the Eastern District of Pennsylvania held that an ADA plaintiff sufficiently alleged an injury-in-fact when he or she had been "deterred from patronizing a public accommodation because of accessibility barriers." *Garner v. VIST Bank*, No. CIV.A. 12-5258, 2013 WL 6731903, at *6 (E.D. Pa. Dec. 20, 2013). *See also Anderson v. Franklin Inst.*, 185 F. Supp. 3d 628, 640 (E.D. Pa. 2016) (discussing the deterrence effect test from *Garner*). This test requires a plaintiff to show that (1) "he or she has actual knowledge of barriers preventing equal access" and (2) there is "a reasonable likelihood that the plaintiff would use the facility if not for the barriers." *Garner*, 2013 WL 6731903, at *6. The "deterrence effect" test was not abrogated by *Spokeo*. *See, e.g., Hollinger*, 2016 WL 3762987, at *10. Rather, the Court of Appeals for the Third Circuit does not interpret *Spokeo* as changing any of the standing requirements. *See In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 638 (3d Cir. 2017) ("[W]e understand that the *Spokeo* Court meant to reiterate traditional notions of standing, rather than erect any new barriers that might prevent Congress from identifying new causes of action though they may be based on intangible harms." (footnote omitted)).

---

[3] In *Spokeo*, the United States Supreme Court held that "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).

Mr. Tawam alleges that he is unable to find the location for APCI's facilities because of the accessibility barriers on the website. *See* Am. Compl. ¶ 7. As previously discussed, Mr. Tawam supplies facts showing that he would be allowed to use the facilities as a member of a federal credit union that is part of the Co-Op network. *See id.* Mr. Tawam also asserts that he "would have located and visited" the physical locations, but for the barriers. *See id.* ¶ 18. Thus, at this stage of the proceedings, the Amended Complaint demonstrates a viable injury under the deterrence effect test. Although *Spokeo* correctly reemphasizes that a plaintiff cannot simply assert a bare violation of a statute, Mr. Tawam has asserted that APCI has violated the ADA and that he has been "affected with some specific, identifiable trifle of injury[.]" *Horizon*, 846 F.3d at 633 (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014)). In a statutory violation context, "so long as an injury 'affect[s] the plaintiff in a personal and individual way,' the plaintiff need not 'suffer any particular type of harm to have standing.'" *Id.* at 636 (quoting *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, 806 F.3d 125, 134 (3d Cir. 2015)).

### *4. There is no need to speculate on whether dignitary harm is sufficient to establish an injury-in-fact because Mr. Tawam alleges another concrete and imminent injury.*

As an alternative argument, Mr. Tawam asserts that he has suffered an injury to his dignitary interest. *See* Pl.'s Opp. Def.'s Mot. Dismiss 8. The Court of Appeals for the Third Circuit has not commented on whether a dignitary harm resulting from an ADA violation establishes an injury-in-fact. Some other Circuits have recognized a dignitary interest in the context of an ADA suit. *See, e.g. Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 874 (9th Cir. 2017) (discussing nominal damages for dignitary harm in an ADA action); *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 724 (8th Cir. 2003) ("[T]he mere fact of discrimination offends the

11
080318

dignitary interest that the [ADA is] designed to protect, regardless of whether the discrimination worked any direct economic harm to the plaintiffs."). But, a Virginia District Court confronted with the same issue concluded that allowing dignitary harm would result in abandoning the injury-in-fact requirement for ADA violations. *See Griffin v. Dep't of Labor Fed. Credit Union*, 293 F. Supp. 3d 576, 579 (E.D. Va. 2018) (observing that if the court recognized a dignitary harm "any disabled person who learned of any barrier to access would automatically have standing to challenge the barrier, thereby essentially eliminating the injury-in-fact requirement"). Regardless, it is unnecessary to speculate at this time because Mr. Tawam's deterrence injury independently confers standing. *See, e.g., Trump v. Hawaii*, No. 17-965, 2018 WL 3116337, at *18 (U.S. June 26, 2018) ("We need not decide whether the claimed dignitary interest establishes an adequate ground for standing. The three individual plaintiffs assert another, more concrete injury[.]").

Based on the facts and allegations before the Court at this stage of the proceedings, Mr. Tawam has standing to pursue this action.[4]

### B. Under the facts of this case, APCI's website can be subject to the ADA as a service offered by a place of public accommodation.

Title III of the ADA generally provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). APCI argues that its website is not a place of public accommodation because the Court of Appeals for the Third Circuit expressly limited the statutory phrase "public

---

[4]   This determination is made without prejudice to be renewed at the summary judgment stage should the evidence support a contrary conclusion.

accommodation" to mean physical places. *See Ford v. Schering-Plough Corp.*, 145 F.3d 601, 612, 614 (3d Cir. 1998) ("The plain meaning of Title III is that a public accommodation is a place . . . [and] does not "refer to non-physical access."). APCI reasons that any accessibility barriers on the website are not protected by the ADA.

Although APCI categorizes its website as being the "place of public accommodation" at issue, for the purposes of the Motion to Dismiss, the federal credit union location, as opposed to the website, is the "place of public accommodation" at issue. *See* 42 U.S.C. § 12181(7) (defining public accommodation as, *inter alia*, "a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment"). The website is a service offered by APCI and therefore may be subject to the ADA if it has a sufficient nexus to APCI's physical location. *See Ford*, 145 F.3d at 613 (concluding there was no nexus between an insurance policy obtained via employment and the insurance office of the insurance company); *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 120 (3d Cir. 1998) ("[W]e required at the very least some 'nexus' between the physical place of public accommodation and the services denied in a discriminatory manner.").

### 1. *A federal credit union is a place of public accommodation.*

The ADA prescribes that certain private entities are considered public accommodations, including banks or other service establishments, if the operations of such entities affect commerce. *See* 42 U.S.C. § 12181(7). Federal credit unions are not specifically listed in the definition of public accommodations. *See id.* However, a federal credit union qualifies as an "other service establishment" under the statute because of its similarity to a bank and the fact that

13
080318

the operations of a federal credit union affect commerce.[5] *See PGA Tour, Inc. v. Martin*, 532 U.S. 661, 676-77 (2001) ("[T]he legislative history indicates [the phrase public accommodation] 'should be construed liberally' to afford people with disabilities 'equal access' to the wide variety of establishments available to the nondisabled.").

### 2. Mr. Tawam pleads sufficient facts that APCI's website is a service protected by the ADA because it has a sufficient physical nexus to the place of public accommodation.

The ADA provides that discrimination includes "failure to take such steps as may be necessary to ensure that no individual with a disability is . . . denied services . . . because of the absence of auxiliary aids and services," 42 U.S.C. § 12182(b)(2)(A)(iii), which includes screen readers, *see* 28 C.F.R. § 36.303. A claim for discrimination under Title III of the ADA requires some "nexus" between the physical place of public accommodation and the services denied in a discriminatory manner. *See Menkowitz*, 154 F.3d at 120. The Court of Appeals for the Third Circuit illustrated the bounds of the nexus requirement in *Ford*, *Menkowitz*, and *Peoples v. Discover Fin. Servs., Inc.*, 387 F. App'x 179, 183 (3d Cir. 2010).

In *Ford*, the plaintiff sought protection under Title III due to the disparity in the benefits between mental and physical disabilities offered by a MetLife insurance policy obtained through her employer. *See* 145 F.3d at 612. The Court of Appeals did not find the nexus. *See id.* at 613.

---

[5] A federal credit union could feasibly argue that it is a "private club," which is exempted from the public accommodation requirements of the ADA. *See* 42 U.S.C. § 12187 (providing that the ADA "shall not apply to private clubs or establishments exempted from coverage under title II of the Civil Rights Act of 1964"); 42 U.S.C § 2000a(e) (providing that the Civil Rights Act public accommodation requirements "shall not apply to a private club or other establishment not in fact open to the public, except to the extent that the facilities of such establishment are made available to the customers or patrons of an establishment"). But, the Court does not need to consider whether a federal credit union is a private club at the motion to dismiss stage because APCI bears the burden of proving it is a private club. *See United States v. Lansdowne Swim Club*, 713 F. Supp. 785, 795-97 (E.D. Pa. 1989), *aff'd*, 894 F.2d 83 (3d Cir. 1990) (stating that whether an entity qualifies as a private club depends on eight factors).

The court reasoned that the goods, services, facilities, privileges, advantages, or accommodations protected by the ADA are "not free-standing concepts but rather all refer to the statutory term 'public accommodation' and thus to what these places of public accommodation provide." *Id.* The question is whether the public accommodation offers "resources utilized by physical access." *Id.* at 614. The insurance policy had no nexus to Metlife's office as the policy was offered by Metlife via the plaintiff's employment, so the court denied the plaintiff's Title III claim. *See id.* ("Ford fails to state a claim under Title III of the ADA since the provision of disability benefits by MetLife to Schering's employees does not qualify as a public accommodation."). The insurance policy at issue in *Ford* illustrates when a service is entirely unrelated to a public accommodation.

In *Menkowitz*, a hospital suspended a physician suffering from attention-deficit disorder. *See* 154 F.3d at 115. The physician alleged that he had been discriminated against "on the basis of his disability by denying him the opportunity to participate in the medical staff privileges offered by the hospital." *Id.* at 116. The Third Circuit Court of Appeals found the required nexus. *See id.* at 122 ("Because of the appellant's suspension from the active medical staff, he can no longer enjoy the hospital's physical facilities . . . . [W]e cannot imagine a greater nexus . . . ."). The court determined that the hospital "denied the appellant the requisite physical access that we found lacking in *Ford*" by suspending the physician and denying him access to the hospital. *Id. Menkowitz* therefore typifies a successful Title III claim.

In *Peoples*, a blind plaintiff repeatedly utilized the services of a prostitute, each time paying with his Discover card on a terminal operated by the prostitute. *See Peoples*, 387 F. App'x at 181-82. Unable to read the receipts, he nevertheless signed and retained them. *See id.* at 182. Upon reviewing his credit card statements with the assistance of his mother, he believed

the prostitute had overbilled him and notified Discover of the fraud. *See id.* Discover reviewed the claim and concluded there was not a sufficient basis to find fraud in the billing, noting that Discover offered both an automated telephone system and live assistance which would have notified the plaintiff of the fraud earlier. *See id.* The plaintiff asserted a Title III ADA claim on the grounds that Discover discriminated against him by failing to consider his blindness when addressing his fraud claim. *See id.* at 183. The Court of Appeals did not find the required nexus. *See id.* (noting that the credit card terminal owned and operated by the prostitute was not a public accommodation of Discover because it was not leased, owned, or operated by Discover). Because the prostitute owned the credit card terminal—the place of public accommodation at issue—the fraud claim was unrelated to any public accommodation. The Court of Appeals affirmed the dismissal of the Title III claim against Discover for discriminating against the plaintiff during the fraud investigation.

In the instant case, Mr. Tawam alleges that accessibility barriers on the website prevent him from enjoying certain services of APCI. Among those services, the plaintiff alleges that he cannot access the public information provided on the website, which includes types of accounts offered, interest rates, online services, eligibility for APCI membership, details on the Co-Op Shared Branch network of credit unions, and its credit union location. *See* Am. Compl. ¶¶ 4, 6, 13. At this stage of the litigation, Mr. Tawam has sufficiently alleged that the accessibility barriers on the website prevent him from finding and visiting the APCI location or learning about services offered at APCI locations. Thus, Mr. Tawam has asserted that the website services have a sufficient physical nexus to APCI's physical location. *Cf. Gniewkowski v. Lettuce Entertain You Enterprises, Inc.*, 251 F. Supp. 3d 908, 918 (W.D. Pa. 2017) (holding that a website was a place of public accommodation because the bank owned, operated, and controlled the website).

16
080318

*See also Demetro v. Nat'l Ass'n of Bunco Investigations*, Civ. No. 14-6521, 2017 WL 3923290, at \*14 (D.N.J. Sept. 7, 2017) (concluding that the legal question of whether a website was a place of public accommodation was unsettled and allowing the case to proceed to discovery).

## V. CONCLUSION

Weighing the facts currently on the record, this Court concludes that Mr. Tawam has sufficiently demonstrated that he suffered an injury, which is concrete and particularized, and actual or imminent. He therefore has standing to proceed with the instant action. Additionally, because Mr. Tawam alleges that the accessibility barriers on APCI's website deterred him from physically accessing APCI's physical location, he has presented sufficient allegations at this early stage of the proceedings to support the nexus required to state an ADA claim. The Motion to Dismiss is denied.

A separate order will be issued.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

17
080318